## The City of Rochester *vs.* The Supervisors of Monroe County.

The statutes relating to the support of the poor at county poor-houses furnish no authority for a discrimination between county and town poor, in respect to the application of the income of the poor-house farm. On the contrary the legislature intended the income should be applied to the support of the poor of the county generally at the poor-house, without distinction.

The statutory provisions obviously contemplate that the benefits resulting from the poor-house and farm shall be common to the county and towns, in respect to the support of the poor at the poor-house, without any regard whatever to the general obligation of each to support its own poor.

The occupancy of the property, the products of the farm consumed thereon and in the poor-house, the labor of the poor in carrying on the farm and the business of the poor-house, the avails of sales of products of the farm and the labor of the poor, are all to go, and be applied, to reduce the expenses of the support of the poor generally, at the poor-house, without any discrimination.

Thus, where the city of Rochester was, by law, in the condition of a town, in respect to the mode of supporting its poor at the county poor-house; *it was held* that the income of the poor-house farm in Monroe county ought to be applied to the support, indiscriminately, of the county, town, and city poor, kept at the county poor-house on said farm.

THIS was a case agreed upon by the parties for submission to the court, without action, under section 372 of the code. The controversy related to the proper mode of applying the

City of Rochester *v.* Supervisors of Monroe.

income of the poor-house farm of Monroe county, in support of the poor therein, whose support is made a public charge.   The object of the case was to obtain from the court a construction of those provisions of the revised statutes on the subject of the support of the poor, upon which the controversy depends.   The facts are as follows : For several years prior to and at the date of this controversy, the county of Monroe was, and is, the owner of a poor-house farm, within said county, consisting of about one hundred and twenty acres, on which is erected the county poor-house of said county, at which are now, and have been during the period of such ownership, kept the county poor of said county, the town poor of the several towns, and of the city of Rochester in said county, or such portions of said county, town, and city poor, as are by law directed to be kept at said poor-house.   This farm was purchased, and the county poor-house erected thereon, by the superintendents of the poor of said county, in pursuance of a determination of its board of supervisors, according to the statute in relation to the support of the poor, and the expense of such farm and buildings was raised by a tax on the real and personal estate of the inhabitants of said county.   The distinction between town and county poor has never been abolished in Monroe county, and the city of Rochester is by law in the condition of a town of said county, in respect to the mode of supporting its poor at said county poor-house.   The several classes of poor before specified, supported at said county poor-house, are, and have been since such ownership, employed indiscriminately in labor, so far as they are able, in the cultivation of said farm, under the direction of the superintendents of the poor of said county ; but all the labor on said farm has not been performed by said paupers, and the part not performed by them has been a county charge ; and the income of said farm has been, under the direction of the county superintendents, consumed in support of the several classes of poor, kept at said poor-house.   The annual income of said farm is from three to four thousand dollars, and was three thousand eight hundred and ninety-nine dollars for the year 1854.   The board of supervisors of said county at their annual session, on the 3d

day of November, 1854, adopted a resolution, directing three thousand dollars of the income of the said poor-house farm for that year to be applied to the support of the county poor of said county exclusively, and accordingly further directed that three thousand dollars be charged to the said city of Rochester and the towns of Monroe county, in proportion to the number and expense of paupers the said city and towns had severally had kept at said county poor-house during said year, and that said county be credited with that amount as income of said poor-house farm. These directions were carried into effect, and the city of Rochester was assessed with its proportion of said three thousand dollars, in accordance with said directions. Against this application of the income of said poor-house farm, the city of Rochester protested as unjust to said city as a tax-payer, and to the tax-paying inhabitants residing therein, and as unauthorized by law; and insisted, on the other hand, that by the true construction of the law, said income should be applied to the support, without discrimination, of the county, town and city poor, kept at said poor-house as aforesaid, and that only the deficiency found to exist, after exhausting that fund, (and all other funds provided by law for the support of the said poor,) should be charged to and assessed upon said towns and city. The said supervisors refused to recede from their said action, but thereupon agreed as above stated, to avoid litigation, to submit said question of difference to this court. The city of Rochester is and was, at the time of the arising of said controversy, the owner in its corporate capacity of property within its limits, liable to be taxed by said supervisors for the support of the poor, kept at said county poor-house, in the same manner as the individual property owners in said city, and as such owner, was taxed on its said property, in common with the inhabitants of said city, for a part of said three thousand dollars. The aggregate taxable property of and within the said city of Rochester amounted, in 1854, to about one third of the aggregate taxable property of said county of Monroe, including said city. The number of paupers supported at said county poor-house, in the year 1854, was 1339; the amount expended in

City of Rochester *v.* Supervisors of Monroe.

their support, including salaries of officers and others, during said year, was $20,072.30. The county poor, kept at said poor-house during said year, was about equal to the aggregate of said city and town poor kept there. The city poor of said city, supported at said county poor-house for the year 1854, was in the ratio of about three to one to the aggregate town poor of said county, supported at said poor-house during said year, which was about the ratio of previous years.

The question submitted to the court upon the foregoing case was this : By the true construction of the statute, ought the income of the poor-house farm, before mentioned, to be applied to the support indiscriminately of the county, town and city poor, kept at the county poor-house, on said farm ; or ought it to be applied exclusively to the support of the county poor of Monroe county ; or ought it to be applied exclusively to the support of the county poor of said county, after deducting the value of pauper labor performed by the town and city paupers ?

*F. L. Durand,* for the plaintiffs.

*Jerome Fuller,* for the defendants.

*By the Court,* T. R. STRONG, J. Upon a careful examination of the statutes relating to the support of the poor at county poor houses, I find no authority for a discrimination between county and town poor, in respect to the application of the income of the poor-house farm. On the contrary, it is quite apparent the legislature intended the income should be applied to the support of the poor of the county generally at the poor-house, without distinction. By § 17, (1 *R. S.* 618,) authority is given to the board of supervisors of any county to determine to erect a county poor-house " for the reception of the poor of the county," and to direct the superintendents of the poor of such county to purchase a farm, and erect suitable buildings for a poor-house ; to defray the expenses of which, the board may raise, not exceeding a specified sum, by tax on the real and personal estate of the inhabitants of the county ; the tax to be raised, assessed

and collected in the same manner as other county charges. After a poor-house is established in a county, any applicant for relief to any overseer of the poor, if it appears he is in such indigent circumstances as to require permanent relief and support, and can be removed, is to be taken to the poor-house, (§ 39, *id.* 624,) and there supported and relieved, until it shall appear he is able to work and maintain himself. (§ 41, *id.*) The superintendents of the poor, who are declared a corporation, have power, and it is their duty, among other things, to purchase the furniture, implements and materials, that shall be necessary from time to time for the maintenance of the poor at the poor-house, and their employment in labor or manufactures, and to sell and dispose of the proceeds of such labor, as they shall deem expedient. They are to draw, from time to time, on the county treasurer, for all necessary expenses incurred in the discharge of their duties; which drafts are to be paid by him out of the moneys placed in his hands for the support of the poor; to account to the board of supervisors for all moneys received and expended, and all their proceedings; and to pay over all moneys remaining in their hands, within fifteen days after the expiration of their office, to the county treasurer, or to their successors. (*Id.* § 16, *subs.* 4, 9, 10, 11.) Section 47 provides, that in counties where the respective towns are required to support their own poor, the county treasurer shall credit each town with the moneys received from the same or from its officers, and charge it with the moneys paid for the support of the poor chargeable to such town; and also, if there be a county poor-house, the sums charged the town by the county superintendents, as hereinafter mentioned. By § 48, (*Id.* 626,) in a county where there is a poor-house, and the several towns are liable for the support of their poor respectively, the superintendents are required to make out annually, at a specified time, a "statement of all the expenses incurred by them the preceding year and of the moneys received, and exhibiting the deficiency, if any, in the funds provided for the defraying such expenses; and they shall apportion the said deficiency among the said several towns, in proportion to the number and expenses of the

paupers belonging to the said towns respectively, who shall have been provided for by the said superintendents, and shall charge the said towns with the said proportions." The next section directs that where. there is a balance against any town, the board of supervisors shall add the same to the amount of taxes to be levied and collected upon such town. Subsequent sections provide that estimates shall be presented by the superintendents of the poor to the board of supervisors, annually, of the sums necessary for the support of the county poor, and the supervisors shall cause such sum as they deem necessary to be collected and paid to the county treasurer, to be by him kept as a separate fund, distinct from the other funds of the county; also that overseers of the poor, in counties where the respective towns are made liable for the support of their poor, shall annually present to their towns estimates of the sums necessary for the support of the poor the ensuing year; and the inhabitants of said town shall by vote determine the sum to be assessed for those purposes, which, when raised and collected in those counties where there is a county poor-house, shall be paid to the county treasurer, and by him placed to the credit of the towns. These are all the provisions of the statute material to the question under consideration; and they obviously contemplate that the benefits resulting from the poor-house and farm shall be common to the county and towns, in respect to the support of the poor at the poor-house, without any regard whatever to the general obligation of each to support its own poor. The occupancy of the property, the products of the farm consumed thereon and in the poor-house, the labor of the poor in carrying on the farm and the business of the poor-house, the avails of sales of products of the farm and the labor of the poor, are all to go, and be applied, to reduce the expenses of the support of the poor generally at the poor-house, without any discrimination. These represent the interest on the investment in the farm and buildings, and personal property connected therewith; and it would be as reasonable for the county to charge the towns the interest, or a portion of it, as to withhold from them

the benefits, or a portion of them, of the establishment in another form; indeed it would be in substance the same thing. The avails of sales should be used, as far as they will go, to pay expenses of conducting the business of the farm and poor-house and general expenses of the establishment, and thus be credited on the expenditures of the superintendents, in ascertaining the deficiency to be apportioned among the towns.

If it had been the design of the legislature that the county should have the preference as to the income of the farm, it is fair to presume the intention would have been expressed in clear terms; that what should constitute the income would have been prescribed; that directions would have been given in regard to keeping the accounts, so that the items might be ascertained, and that some provision would have been made for allowing each town a fair compensation for the labor of its poor on the farm and in the poor-house.

The plaintiffs, as it is stated in the case, are by law in the condition of a town, in respect to the mode of supporting their poor at the county poor-house. It follows that the plaintiffs are entitled to judgment that the income of the poor-house farm in Monroe county be applied to the support indiscriminately of the county, town and city poor, kept at the county poor-house on said farm.

[Monroe General Term, September 1, 1856.   *T. R. Strong, Welles* and *Smith,* Justices.]